UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FINDMYSEATS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| CARBIDE CAPITAL PARTNERS, LLC d/b/a | ) | |
| CARBIDE TIX, CHRISTOPHER ARTHUR, and | ) | |
| RYAN BATTLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

**Introduction**

FindMySeats, LLC ("FindMySeats") brings this action against Carbide Capital Partners, LLC d/b/a Carbide Tix ("Carbide Tix"), Christopher Arthur, and Ryan Battle (collectively, "Defendants") seeking injunctive relief, damages, and attorneys' fees and costs arising principally from Defendants' wrongful misappropriation, starting in 2015, of FindMySeats' confidential and proprietary information, and Defendants' operation of Carbide Tix, a competitive ticket sales company, to derive substantial revenue and divert business opportunities from FindMySeats. Defendants used the position of trust held by Defendant Christopher Arthur, a valued and trusted employee of FindMySeats during the relevant period and 50 percent owner of Carbide Tix, to accomplish these wrongful actions. Defendants have generated significant revenue since 2015 based on their wrongful misappropriation and unfair competition, and under Counts I-X, FindMySeats seeks injunctive relief, damages, and attorneys' fees and costs.

**Parties**

1.      FindMySeats is a Massachusetts limited liability company with a principal place of business at 80 Central Street, Suite 175, Boxborough, Massachusetts.

2.      Carbide Tix is a Pennsylvania limited liability corporation with a principal place of business at 2236 Walters Rd., Allison Park, Pennsylvania.

3.      Christopher Arthur is an individual residing at 2236 Walters Rd., Allison Park, Pennsylvania.

4.      Ryan Battle is an individual residing at 4124 Randolph Road, Charlotte, North Carolina.

**Jurisdiction and Venue**

5.      The Court has subject matter jurisdiction of this action under 28.U.S.C. § 1331, 28 U.S.C. § 1836(c), and 18 U.S.C. § 1030, and over the other claims set forth below through pendent jurisdiction, as well as under 28 U.S.C. § 1332 (diversity jurisdiction) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to this action occurred within this judicial district.

**Facts**

7.      FindMySeats was founded in 2012 by Taylor Kurth and operates as a business that purchases, and re-sells at a profit on the secondary market, tickets for special events, including concerts and musicals, throughout the United States.

8.      In 2014 FindMySeats hired Christopher Arthur as an employee to perform, among other duties, various ticket purchasing, ticket listing, and ticket selling duties.  In January 2016, Christopher Arthur was promoted to the position of Operations Manager, and provided an

increase in annual compensation at that time.  Christopher Arthur worked for FindMySeats until his termination on September 26, 2018.

9.      Christopher Arthur was introduced to Taylor Kurth by Ryan Battle.  Ryan Battle was a former co-worker of Taylor Kurth, when both worked at an entity name The Shaw Group in Stoughton, Massachusetts.

10.     Prior to Christopher Arthur's hiring, he represented to Taylor Kurth that he had been terminated from his previous employment as a registered nurse at a hospital based on his disagreement with certain hospital policies.

11.     Taylor Kurth relied on this representation in deciding to hire Christopher Arthur.

12.     At or around the time of Christopher Arthur's hire, Taylor Kurth assisted in the acquisition of Christopher Arthur's residence, located at 2236 Walters Road, Allison Park, Pennsylvania (the "Allison Park Residence"), by providing him with a down payment in the form of a $10,000 loan at 0% interest. The $10,000 loan was later forgiven and treated as a bonus.

13.     The Allison Park Residence doubled as Christopher Arthur's home office. FindMySeats paid for the purchase of 4 computers, 12 monitors, and other office equipment for Christopher Arthur's use at his home office.

14.     By April 2014, FindMySeats had developed a unique and confidential business process that allowed it to generate significant revenue in the secondary ticket market. Specifically, FindMySeats researched, formulated, and developed a process whereby the use of a specific combination of ten tools, when utilized in the aggregate, allows FindMySeats to successfully purchase and sell tickets at a profit (the "Process").

15.     The Process is used in conjunction with substantial research efforts on ticket events and sale opportunities, and with the pricing expertise of certain FindMySeats personnel, in order to profitably purchase and sell tickets.

16.     FindMySeats implemented a number of precautions and undertook efforts to keep the Process secret, including by not disseminating the Process publicly, only revealing the Process to a small group of trusted employees, and using password-protected devices for all business functions related to ticket sales.

17.     In the course of Christopher Arthur's employment with FindMySeats, he, as a trusted employee, had access to and utilized the Process, as well as other confidential business records and information, in the course of performing his employment-related duties.

18.     On approximately April 14, 2015, without FindMySeats' knowledge, Christopher Arthur and Ryan Battle, as 50-50 owners, formed Carbide Tix.

19.     Carbide Tix is a direct competitor of FindMySeats.

20.     Despite forming Carbide Tix, Christopher Arthur continued to work for FindMySeats, but hid his competitive business activities for Carbide Tix from FindMySeats.

21.     Upon information and belief, Christopher Arthur devoted significant time to the operation of Carbide Tix while employed by, and instead of completing work for, FindMySeats.

22.     Christopher Arthur and Ryan Battle disguised Christopher Arthur's competitive activities from FindMySeats by making Ryan Battle the outward face of Carbide Tix.

23.     This disguise was necessary because Carbide Tix was formed for the purpose of utilizing FindMySeats' Process and other confidential business information and opportunities for Christopher Arthur and Ryan Battle's personal financial gain.

24.     Carbide Tix achieved this purpose by utilizing Christopher Arthur's access, as a trusted employee, to the Process and FindMySeats' confidential business records and ticket leads, and misappropriating that information in order to complete ticket purchases and sales on behalf of Carbide Tix.

25.     Christopher Arthur's primary role on behalf of Carbide Tix was to provide FindMySeats' misappropriated information to Ryan Battle, and Ryan Battle would then take that information and work with third party vendors to complete ticket sales.

26.     By misappropriating the Process and FindMySeats' confidential business information and opportunities, Defendants diverted FindMySeats' business opportunities to Carbide Tix.

27.     Upon information and belief, Ryan Battle, at all times, substantially assisted in Christopher Arthur's misappropriation of FindMySeats' Process and other confidential business information, and has profited from those misappropriations.

28.     Defendants also improperly used FindMySeats' property and funds as part of Carbide Tix's business, including completing ticket purchases and sales with FindMySeats' computers and office equipment, and applying expenses related to the operation of Carbide Tix to Christopher Arthur's FindMySeats corporate credit card.

29.     To date, as a direct result of Defendants' wrongful conduct, FindMySeats believes Defendants to have generated at least $11 million in revenue.

30.     In January 2018, Defendants moved Carbide Tix operations out of Christopher Arthur's house, and relocated to a rented office space at 8898 Peebles Road, Allison Park, PA.

31.     In July 2018, FindMySeats paid for Christopher Arthur to attend a trade show in Las Vegas, Nevada, along with other FindMySeats employees.

32.     During this business trip, Christopher Arthur disclosed to Taylor Kurth and FindMySeat's Brendan Lafferty that the actual reason for his termination from his previous employment as a registered nurse was his theft of prescription medication from a patient.

33.     During this same business trip, Christopher Arthur secretly approached Brian Kelley, a then-employee of an entity affiliated with FindMySeats that also operates a ticket resale business, and explained that he was "branching out on his own." At that time, Christopher Arthur solicited Mr. Kelley to work for Carbide Tix. Brian Kelly had worked for FindMySeats before he began employment at its affiliated entity.

34.     In July 2018, Christopher Arthur offered Brian Kelly a full-time position at Carbide Tix.  Brian Kelley initially told Christopher Arthur that he was undecided and at that point, Christopher Arthur offered to pay Brian Kelley to misappropriate data and research from his employer (FindMySeats' affiliate) and provide it to Christopher Arthur to use in furtherance of Carbide Tix's business.  Brian Kelly accepted this offer, and misappropriated confidential information and business opportunities for Carbide Tix's benefit.  Brian Kelly's employment with FindMySeats' affiliate was terminated in October 2018, after the affiliate learned of his wrongful misappropriation of confidential information and business opportunities for Carbide Tix's benefit.

35.     In August 2018, FindMySeats was informed by a third party vendor that it had identified suspicious activity relating to FindMySeats' ticket accounts and Carbide Tix's ticket accounts. Specifically, the third party vendor informed FindMySeats that Carbide Tix's ticket accounts appeared to be exact duplicates of FindMySeats' ticket accounts.

36.     On September 26, 2018, Taylor Kurth, Brendan Lafferty, and two other FindMySeats representatives traveled from Boston, Massachusetts to Christopher Arthur's house in Allison Park, Pennsylvania, to confront him regarding his suspected wrongful conduct.

37.     After arriving at Christopher Arthur's house, and requesting that Christopher Arthur return all FindMySeats property, Christopher Arthur took the four FindMySeats representatives to Carbide Tix's new office location at 8898 Peebles Road, Allison Park, Pennsylvania.

38.     After arriving at the Carbide Tix office location, the FindMySeats representatives observed several individuals associated with Christopher Arthur working at computer work stations, including another FindMySeats employee, Tom Lope, who was supposed to be working for FindMySeats out of Christopher Arthur's home office.

39.     Christopher Arthur admitted to his and Ryan Battle's involvement in the wrongful actions described above, and acknowledged that Carbide Tix had generated approximately $2 million in revenue in 2016, $3 million in 2017, and $6 million in 2018.

40.     Christopher Arthur admitted that he had no "exit strategy" and planned to continue his employment with FindMySeats indefinitely while continuing to misappropriate FindMySeats' business opportunities for Carbide Tix' benefit.

41.     After this discussion, FindMySeats terminated Christopher Arthur's employment, and with Christopher Arthur's consent, collected the FindMySeats property being wrongfully utilized by Defendants at Carbide Tix's office location.

42.     FindMySeats' subsequent investigation has revealed that on multiple occasions, Christopher Arthur, while still employed by FindMySeats, used FindMySeats' Process and its

confidential information and business opportunities to engage in ticket buying and selling activity for the benefit of Carbide Tix, to the detriment of FindMySeats' business interests.

**Count I**
**Breach of Duty of Loyalty to Employer**
**Against Christopher Arthur**

43. FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

44. Christopher Arthur occupied a position of trust and confidence while employed at FindMySeats. As such, Christopher Argument had access to FindMySeats' confidential information.

45. In violation of his position of trust and confidence, and while employed by FindMySeats, Christopher Arthur founded and worked for Carbide Tix, a competing ticket sales company, and misappropriated FindMySeats' Process and its confidential information and business opportunities.

46. Christopher Arthur's actions were designed to benefit Defendants at FindMySeats' expense, and were in breach of his duty of loyalty to FindMySeats.

47. Christopher Arthur's wrongful actions have caused, and continue to cause, substantial damages and irreparable harm to FindMySeats.

**Count II**
**Aiding and Abetting Breach of Duty of Loyalty**
**Against Ryan Battle and Carbide Tix**

48. FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

49.     Christopher Arthur occupied a position of trust and confidence while employed at FindMySeats. As such, Christopher Arthur had access to FindMySeats' Process and confidential information and business opportunities.

50.     In violation of his position of trust and confidence, and while employed by FindMySeats, Christopher Arthur founded and worked for Carbide Tix, a competing ticket sales company, and misappropriated FindMySeats' Process and its confidential information and business opportunities.

51.     Christopher Arthur's actions were designed to benefit Defendants at FindMySeats' expense, and were in breach of his duty of loyalty to FindMySeats.

52.     Ryan Battle and Carbide Tix's substantial assistance in creating a competing ticket sales company that was designed to, and in fact did, purchase and sell tickets using FindMySeats' Process and its confidential information, aided and abetted Christopher Arthur's breaches of his duty of loyalty to FindMySeats.

53.     Ryan Battle and Carbide Tix's wrongful actions have caused, and continue to cause, substantial damages and irreparable harm to FindMySeats.

### Count III
### Misappropriation of Trade Secrets in Violation of 18 U.S.C. § 1836
### Against All Defendants

54.     FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

55.     Christopher Arthur, as a trusted employee of FindMySeats, had access to FindMySeats' trade secrets, as encompassed within 18 U.S.C. § 1836.

56.     Defendants misappropriated FindMySeats' trade secrets in violation of 18 U.S.C. § 1836 through their unauthorized acquisition and use of those trade secrets in furtherance of the Carbide Tix business.

57.     This misappropriation was willful and malicious, and has caused and continues to cause substantial damages and irreparable harm to FindMySeats, and FindMySeats is entitled to recover double damages and injunctive relief pursuant to 18 U.S.C. § 1836.

**Count IV**
**Misappropriation of Trade Secrets in Violation of M.G.L. c. 93, §§ 42 & 42A**
**Against All Defendants**

58.     FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

59.     Christopher Arthur, as a trusted employee of FindMySeats, had access to FindMySeats' trade secrets, as encompassed within M.G.L. c. 93, §§ 42 & 42A.

60.     Defendants misappropriated FindMySeats' trade secrets in violation of M.G.L. c. 93, §§ 42 & 42A through their unauthorized acquisition and use of those trade secrets in furtherance of the Carbide Tix business.

61.     This misappropriation has caused and continues to cause substantial damages and irreparable harm to FindMySeats, and FindMySeats is entitled to recover double damages pursuant to M.G.L. c. G.L. c. 93, § 42 and injunctive relief pursuant to G.L. c. 93, § 42A.

**Count V**
**Misappropriation of Trade Secrets and Confidential Information Under Massachusetts**
**Common Law**
**Against All Defendants**

62.     FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

63.     Christopher Arthur, as a trusted employee of FindMySeats, had access to FindMySeats' trade secrets and confidential business information in the course of his employment with FindMySeats.

64.     Defendants misappropriated FindMySeats' trade secrets in violation of Massachusetts common law through their unauthorized acquisition and use of those trade secrets in furtherance of the Carbide Tix business.

65.     This misappropriation has caused, and continues to cause, substantial damages and irreparable harm to FindMySeats.

**Count VI**
**Conversion**
**Against Christopher Arthur**

66.     FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

67.     Christopher Arthur intentionally and wrongfully exercised acts of ownership, control and dominion over FindMySeats' Process, its confidential business records and information, its funds, and other property.

68.     Christopher Arthur's wrongful actions have caused and continue to cause substantial damages and irreparable harm to FindMySeats.

**Count VII**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**
**Against Christopher Arthur**

69.     FindMySeats incorporates by reference its allegations in paragraphs 1-42  as if fully set forth herein.

70.     While still employed by FindMySeats, but acting as an agent for Carbide Tix, Christopher Arthur knowingly and repeatedly, and with the intent to defraud and deceive,

misappropriated FindMySeats' proprietary and confidential information from secure computers belonging to FindMySeats, in order to derive substantial revenue for Carbide Tix.

71.     In obtaining and misappropriating FindMySeats' proprietary and confidential information, Christopher Arthur exceeded his authorized access to FindMySeats' computers.

72.     Christopher Arthur's actions were intentional and without FindMySeats' knowledge, permission, or authorization.

73.     As a direct result of Christopher Arthur's actions, FindMySeats has suffered damage and/or loss exceeding $5,000, in an amount to be proven at trial, and will continue to be irreparably harmed.

**Count VIII**
**Fraud Under Massachusetts Common Law**
**Against Christopher Arthur**

74.     FindMySeats incorporates by reference its allegations in paragraphs 1-42  as if fully set forth herein.

75.     Christopher Arthur knowingly made false statements to FindMySeats regarding the circumstances surrounding his termination from his previous employment with the intent to deceive FindMySeats and induce it to enter into an employment relationship with him.

76.     Additionally, while still employed by FindMySeats, but acting as an agent for Carbide Tix, Christopher Arthur knowingly and repeatedly, and with the intent to defraud and deceive, misappropriated FindMySeats' proprietary and confidential information, in order to derive substantial revenue for Carbide Tix.

77.     Additionally, Christopher Arthur, throughout the course of his employment, knowingly made false statements in representing to FindMySeats that he was working on behalf

of, and in the best interests of FindMySeats, when in actuality he was working for Carbide Tix and improperly obtaining and using FindMySeats' proprietary and confidential information.

78.     FindMySeats reasonably relied on Christopher Arthur's false statements and deceptive actions, and as a result, entered into, and continued its employment relationship with Christopher Arthur, enabling him to misappropriate FindMySeats' confidential information and derive substantial revenue for Carbide Tix.

79.     Christopher Arthur's wrongful actions have caused and continue to cause substantial damages and irreparable harm to FindMySeats.

**Count IX**
**Aiding and Abetting Fraud**
**Against Ryan Battle and Carbide Tix**

80.     FindMySeats incorporates by reference its allegations in paragraphs 1-42  as if fully set forth herein.

81.     While still employed by FindMySeats, but acting as an agent for Carbide Tix, Christopher Arthur knowingly and repeatedly, and with the intent to defraud and deceive, misappropriated FindMySeats' proprietary and confidential information, in order to derive substantial revenue for Carbide Tix.

82.     Additionally, Christopher Arthur, throughout the course of his employment, knowingly made false statements in representing to FindMySeats that he was working on behalf of, and in the best interests of FindMySeats, when in actuality he was working for Carbide Tix and improperly obtaining and using FindMySeats' proprietary and confidential information.

83.     Ryan Battle and Carbide Tix's substantial assistance in creating a competing ticket sales company that was designed to, and in fact did, purchase and sell tickets based on

FindMySeats' confidential information, aided and abetted Christopher Arthur's fraud under Massachusetts common law.

84.     Ryan Battle and Carbide Tix's wrongful actions have caused, and continue to cause, substantial damages and irreparable harm to FindMySeats.

**Count X**
**Violation of G.L. c. 93A, §11**
<u>**Against All Defendants**</u>

85.     FindMySeats incorporates by reference its allegations in paragraphs 1-42 as if fully set forth herein.

86.     At all relevant times, FindMySeats and Defendants have been engaged in the conduct of trade or commerce in the Commonwealth of Massachusetts.

87.     Defendants' aforesaid conduct constitutes unfair or deceptive business acts or practices within the meaning of M.G.L. c. 93A.

88.      Defendants' unfair or deceptive business acts or practices occurred substantially and primarily within the Commonwealth of Massachusetts.

89.     Defendants' unfair or deceptive business acts or practices were willful and knowing.

90.     Defendants' unfair or deceptive business acts or practices have caused and continue to cause damage to FindMySeats.

91.     Accordingly, FindMySeats is entitled to recover treble damages, costs and attorneys' fees pursuant to M.G.L. c. 93A.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff FindMySeats requests that this Court grant the following relief:

1.     Enter judgment in favor of FindMySeats on Counts I-X;

2.      Award damages in favor of FindMySeats in an amount to be determined at trial (plus interest), including double or treble damages, and legal fees and expenses;

3.      Enter an injunction prohibiting Defendants from using the Process or FindMySeats' records or information, and to destroy all records and information containing, reflecting, or utilizing the Process or FindMySeats' business information or ticket leads.

4.      Award FindMySeats any further relief that the Court deems just and proper.

## JURY DEMAND

FindMySeats hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

FINDMYSEATS, LLC,

By its Attorneys,

Liam T. O'Connell (BBO # 558249)
*loconnell@nutter.com*
Brian K. Lee (BBO # 676268)
*blee@nutter.com*
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 439-2000

Dated:  October 16, 2018

## CERTIFICATE OF SERVICE

I, Liam T. O'Connell, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Liam T. O'Connell*

4108874.2